**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

COLONY INSURANCE COMPANY,

Plaintiff,

v. CASE NO. 5:05cv135-RH/WCS

GEORGE BARNES, SR., etc., et al.,

Defendants.

_____________________________________/

**ORDER GRANTING SUMMARY JUDGMENT IN PART**

This is a dispute between a liability insurer and its insured nightclub. The issue before the court on cross-motions for summary judgment is whether the insurer has a duty to defend the insured in an underlying wrongful death action. According to the complaint in the wrongful death action, the deceased (a customer of the nightclub) was struck by a stray bullet fired recklessly by a third person in the nightclub parking lot. The complaint alleges the nightclub negligently allowed such activities to occur on the premises. The insurance policy excludes coverage for injuries resulting from assault and battery.

Because the reckless discharge of a firearm in a public parking lot does not

necessarily constitute assault or battery—the shooter might or might not threaten or intend to hit anyone—the insurer must defend the wrongful death action. I enter summary judgment on this issue if favor of the insured.

## BACKGROUND

Faheem S. Brown was shot and killed in the parking lot of a nightclub, the "Dreamland Inn," owned by defendant George Barnes, Sr. ("the insured"). The personal representatives of Mr. Brown's estate sued Mr. Barnes for negligence. Mr. Brown tendered defense of the lawsuit to his liability insurer (the plaintiff in the case at bar), Colony Insurance Company ("the insurer"). The insurer undertook the defense under a reservation of rights and filed this action seeking a declaration that it has a duty neither to defend the lawsuit nor to indemnify Mr. Barnes for any damages award. Each side has moved for summary judgment.

## THE EIGHT CORNER RULE

Under controlling Florida law,[1] the issue of a liability insurer's duty to defend a lawsuit against its insured is governed by the terms of the insurance

---

[1] In this diversity action arising from the issuance of an insurance policy to a Florida insured, Florida law controls. *See, e.g.*, *Travelers Indem. Co. v. PCR Inc.*, 326 F.3d 1190, 1193 (11th Cir. 2003); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002).

policy and the allegations of the complaint.[2] This is sometimes denominated the "eight corners rule," a reference to the relevant inquiry's focus on the four corners of the policy and the four corners of the complaint. If the complaint alleges any claim that, if proven, might come within the insurer's indemnity obligation, the insurer must defend the entire action.[3] Doubts are resolved in favor of the insured.[4]

---

[2] *See Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977) ("The allegations of the complaint govern the duty of the insurer to defend."); *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So. 2d 692, 695 (Fla. 4th DCA 2000) ("'[t]he duty of an insurer to defend is determined *solely* by the allegations of the complaint against the insured' and 'an insurer has no duty to defend a suit against an insured if the complaint on its face alleges a state of facts that fails to bring the case within the coverage of the policy.'") (emphasis in original) (quoting *Marr Invs., Inc. v. Greco*, 621 So. 2d 447, 449 (Fla. 4th DCA 1993)); *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813 (Fla. 1st DCA 1985) ("The rule is firmly established in Florida that a liability insurer's obligation to defend a claim made against its insured must be determined from the allegations in the complaint."); *C.A. Fielland, Inc. v. Fid. & Cas. Co.*, 297 So.2d 122, 127 (Fla. 2d DCA 1974) ("The duty to defend, in the first instance, is determined from the allegations of the complaint.").

[3] Thus the insurer's duty to defend does not depend on the factual accuracy of the complaint. *See Marr Invs., Inc. v. Greco*, 621 So. 2d 447, 449 (Fla. 4th DCA 1993) (holding that "the trial judge erred in considering extraneous matters in resolving the question as to the duty to defend.") (citing *State Farm Fire & Cas. Co. v. Edgecumbe*, 471 So. 2d 209 (Fla. 1st DCA 1985)). Even if the allegations are "factually incorrect or meritless," the insurer must defend. *Jones v. Florida Ins. Guar. Ass'n*, 908 So. 2d 435, 443 (Fla. 2005) (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985), which held that "[w]hen the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend."). For a discussion of the exceedingly narrow circumstances in which facts beyond the four corners of the complaint may be considered in determining the duty to defend, see *Scottsdale Insurance Co. v. Big Bend Timber*

## THE POLICY

The policy at issue in the case at bar covers any lawsuit seeking damages for "bodily injury," including death, arising from an "occurrence," defined in a manner that plainly includes negligence that is a legal cause of a shooting.[5] The policy

---

*Services, Inc.*, Order Granting Summary Judgment at 20-28 (N.D. Fla. Case No. 4:02cv279, document 95, unpublished order of Jan. 5, 2004), *aff'd sub nom. Scottsdale Ins. Co. v. Connell*, __ F.3d ___ (11th Cir. 2004) (unpublished order). The case at bar does not come within these narrow circumstances.

[4] *See Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985) ("If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend."); *see also Cast Steel Prods., Inc. v. Admiral Ins. Co.*, 348 F.3d 1298, 1300 (11th Cir. 2003) ("under Florida law an ambiguity in an insurance policy must be construed in favor of the insured so as not to deny coverage"); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002); *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998); *FCCI Ins. Co. v. Horne*, 890 So. 2d 1141, 1143 (Fla. 5th DCA 2004); *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So. 2d 692, 695 (Fla. 4th DCA 2000); *Union Am. Ins. Co. v. Maynard*, 752 So. 2d 1266, 1268 (Fla. 4th DCA 2000); *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000); *Hughes v. Variety Children's Hosp.*, 710 So. 2d 683, 687 (Fla. 3d DCA 1998) ("exclusions from coverage should be narrowly construed"); *Tire Kingdom, Inc. v. First So. Ins. Co.*, 573 So. 2d 885, 887 (Fla. 3d DCA 1990).

[5] The insurer's assertion that negligence that subjects a person to an intentional shooting by an unrelated third party is not an "occurrence" is wrong and would not matter here in any event, because, as discussed below, the wrongful death complaint does not allege an intentional shooting. An accidental shooting is plainly an occurrence.

obligates the insurer to defend any lawsuit seeking such damages. If that were all there were to it, the insurer would clearly have an obligation to defend the insured against the wrongful death action at issue. But the policy also has an assault and battery exclusion. The critical issue is the effect of that exclusion.

The exclusion applies to lawsuits seeking damages arising out of or resulting from:

> (1) Assault and Battery committed by any person;
>
> (2) The failure to suppress or prevent assault and battery by any person;
>
> (3) The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery;
>
> (4) The negligent hiring, supervision, or training of any person;
>
> (5) The use of any force to protect persons or property whether or not the "bodily injury" or "property damage" was intended from the standpoint of the insured or committed by or at the direction of the insured.

Assault and Battery Exclusion (document 1 ex. A at 22).

**THE UNDERLYING COMPLAINT**

The complaint in the wrongful death action alleges that Mr. Brown was a law abiding customer of the nightclub, that other customers "began firing guns in the parking lot area," and that Mr. Brown died when he was "hit in the chest by a stray bullet." Complaint ¶¶ 9-10 (document 1 ex. B at 50). The complaint alleges that the insured negligently failed to:

> a. suppress or prevent patrons from recklessly shooting firearms on the premises;
>
> b. provide an environment safe from firearm usage by patrons in and around the premises of [the nightclub];
>
> c. hire, supervise, or train security or off-duty law enforcement to patrol the premises of [the nightclub]; and
>
> d. warn [Mr.] Brown of a known likelihood of firearm usage on the premises of [the nightclub], an ultra-hazardous activity that has routinely and repeatedly occurred on the premises over the course of a number of years.

*Id.*, ¶11. The complaint concludes that this "ultra hazardous environment" was caused by the insured's "careless, reckless, and negligent" operation of the nightclub. *Id.*, ¶15.

The complaint's reference to a "stray" bullet suggests that the shooter did not threaten or intend to hit Mr. Brown. The complaint does not specify, however,

whether the shooter threatened or intended to hit anyone else. The complaint's reference to firearms being fired "recklessly," and to their usage "routinely and repeatedly on the premises over the course of a number of years," perhaps suggests there was no intent to hit anyone, but the complaint does not rule out the possibility that *this* shooter intended to hit a person, and even more clearly the complaint does not rule out the possibility that the shooter threatened to do so. In short, the complaint alleges that a gun was fired but does not specify whether the shooter did or did not threaten or intend to hit anyone.[6]

## ANALYSIS

The exclusion at issue refers to "assault *and* battery." (Emphasis added.) For purposes of this order, I assume without deciding that a claim is excluded if it alleges either assault *or* battery. Also, it is clear that in order to be excluded, a claim need not explicitly refer to "assault" or "battery" by name; it is sufficient if, in order to prevail on the claim as pled, the plaintiff would have to prove facts actually constituting an assault or battery, whether or not so labeled.

The issue, then, is whether, in order to prevail on the claims as pled in the

[6] The insurer asserts that the shooting occurred during a gunfight and that the shooter intended to hit someone, albeit not Mr. Brown. But the wrongful death complaint does not so allege.

wrongful death complaint, the plaintiffs necessarily would have to prove that Mr. Brown died as the result of an assault or battery.

The policy does not define “assault” or “battery.” At issue is the meaning of these terms as used in the policy (that is, as used in the parties’ contract), but the terms as used in the policy presumably were intended to have the same meaning as in Florida law. In any event, the meaning of these terms is well settled, in Florida and elsewhere.

The Florida Supreme Court recently gave a hornbook definition of these terms:

> an assault is “the apprehension of immediate harmful or offensive contact with the plaintiff's person, caused by acts *intended* to result in such contacts, or the apprehension of them, directed at the plaintiff or a third person[;]” a battery is the “unpermitted, unprivileged contact[ ] with [the plaintiff's] person, caused by acts *intended* to result in such contact[ ] . . . directed at the [plaintiff's person] or a third person.” William L. Prosser, *Handbook of the Law of Torts*, §§ 9-10 (1941).

*Doe v. Evans*, 814 So.2d 370, 379-80 (Fla. 2002) (additions and deletions by the court; emphasis added).

Earlier Florida decisions are in accord. As long ago as 1936, the Florida Supreme Court said:

> An assault is any *intentional*, unlawful offer of corporeal injury to

> another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented.

*Winn and Lovett Grocery Co. v. Archer*, 126 Fla. 308, 314, 171 So. 204, 217 (1936) (emphasis added). Similarly, in *Spivey v. Battaglia*, 258 So. 2d 815, 817 (1972), the court said that an unsolicited hug that caused an unintended injury was not a battery because of the absence of any intent to make unwelcome contact.

As these cases make clear, assault and battery are *intentional* torts; to commit an assault or battery, an actor must *intend* to cause apprehension or unwanted physical contact. And the same is true of assault and battery in criminal law; *intent* is an element of the offense. See §784.011(1), Fla. Stat. (2003) (defining "assault" as "an *intentional*, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent") (emphasis added); §784.03(1)(a), Fla. Stat. (2003) (saying "battery" occurs when a person "[a]ctually and *intentionally* touches or strikes another person against the will of the other" or "[*i*]*ntentionally* causes bodily harm to another person").

Because of the intent requirement, not every harmful contact is a battery, and

not everything that causes apprehension is an assault. As the Florida Fourth District Court of Appeal recently said:

> An "assault" is an *intentional*, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril. *See Lay v. Kremer*, 411 So.2d 1347 (Fla. 1st DCA 1982). Thus, it must be premised upon an affirmative act—a threat to use force, or the actual exertion of force. Similarly, a battery consists of the *intentional* infliction of a harmful or offensive contact upon the person of another, *see Chorak v. Naughton*, 409 So.2d 35 (Fla. 2d DCA 1981), but [t]he defendant must have done some positive and affirmative act . . . which must cause, and must be intended to cause, an unpermitted contact. *Mere negligence, or even recklessness which only creates a risk that the contact will result, may afford a distinct cause of action in itself, but under modern usage of the term it is not enough for battery*. W. Prosser, *Law of Torts*, § 9, at 35-36 (4th ed. 1971).

*Sullivan v. Atl. Fed. Sav. & Loan Ass'n*, 454 So.2d 52, 54-55 (Fla. 4th DCA1984) (emphasis added).[7] In short, conduct that creates "a Risk, short of substantial certainty, is not the equivalent of intent." *Spivey v. Battaglia*, 258 So. 2d 815, 817

[7] More recent editions of the same hornbook are in accord. *See* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* §9, at 41 (5th ed. 1984) (stating that in order for an act to amount to battery, "[t]he act must cause, and must be intended to cause, an unpermitted contact. . . . Mere negligence, or even recklessness, which creates only a risk that the contact will result . . . is not enough for battery.").

(1972).[8]

These principles make clear that the wrongful death complaint at issue in the case at bar does not necessarily allege either an assault or a battery. First, with respect to assault, the wrongful death complaint does not allege that the shooter threatened anyone, intentionally or otherwise. The wrongful death complaint does not allege that the shooter intended to make anyone apprehensive. And the wrongful death complaint does not allege that anyone was actually made apprehensive. For all that is alleged, the shooter may have discharged the weapon without advance warning, without being seen, and without intending or expecting anyone to become alarmed. The wrongful death complaint thus does not allege that there was assault. Nor does the wrongful death complaint state a claim that necessarily would require proof of an assault in order to succeed.

---

[8] The Florida decisions cited in the text accord with the common law elsewhere as confirmed by the Restatement. *See Restatement (Second) of Torts* §21 (2005) (stating that person commits assault if "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and "the other is thereby put in such imminent apprehension," and stating explicitly that an act not done with the stated intent does not constitute assault "although the act involves an unreasonable risk of causing" apprehension); *Restatement (Second) of Torts* §18 (2005) (stating that an actor commits battery only if "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and stating explicitly that an act not done with the stated intent does not constitute battery "although the act involves an unreasonable risk" of inflicting harm).

Similarly, the wrongful death complaint does not allege that the shooter intended to hit Mr. Brown or anyone else. For all that is alleged, the shooter may have discharged the gun intending *not* to hit anyone. The complaint thus does not allege that there was a battery, and does not state a claim that necessarily would require proof of a battery in order to succeed.

Because the wrongful death complaint does not allege an assault or battery or state a claim that necessarily would require proof of an assault or battery in order to succeed, the insurer's duty to defend is not obviated by the assault and battery exclusion. Summary judgment will be entered accordingly.

This does not mean, of course, that the insurer necessarily will have a duty to indemnify the insured for any award that may be made in the wrongful death action. The duty to indemnify, unlike the duty to defend, turns on the actual facts, not the facts as alleged in the complaint. *See, e.g., Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996). If, in fact, Mr. Brown died as the result of an assault and battery, the assault and battery exclusion will apply. Summary judgment on the merits of the indemnification issue cannot properly be entered at this time or on this record. The clerk will be directed to set a telephonic status conference so that the status of the underlying wrongful death action and the need and appropriateness of further proceedings in the case at bar may be

addressed.

For these reasons,

IT IS ORDERED:

1. Plaintiff's motion for summary judgment (document 3) is DENIED.

2. Defendant's motion for summary judgment (document 26) is GRANTED IN PART.

3. It is hereby declared that plaintiff has a duty to defend plaintiff in the state court wrongful death action at issue. No declaration is made with respect to plaintiff's duty to indemnify plaintiff for any damages awarded in that action.

4. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

5. By separate notice, the clerk shall set a status conference by telephone for the first available date on or after December 13, 2005.

SO ORDERED this 8th day of December, 2005.

s/Robert L. Hinkle
Chief United States District Judge